ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA        :
                                :
        - v. -                  :
                                :
JOHN DAVID MCAFEE, and          :
JIMMY GALE WATSON JR.,          :
                                :
            Defendants.         :
                                :
- - - - - - - - - - - - - - - - X

**SEALED INDICTMENT**

21 Cr.

**21 CRIM 138**

## THE FRAUDULENT SCHEMES

### Background

1.   At all times relevant to this Indictment, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and other members of MCAFEE's so-called cryptocurrency team (the "McAfee Team"), perpetrated two fraudulent schemes relating to the sale to investors of cryptocurrencies qualifying under federal law as commodities or securities (the "scalping scheme" and "ICO touting scheme," respectively).

2.   The first scheme involved a fraudulent practice called "scalping," which is sometimes referred to as a "pump and dump" scheme. In this scalping scheme, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and other McAfee Team members, bought large quantities of publicly traded cryptocurrency altcoins, which qualified as commodities or securities, at inexpensive market prices; published false and misleading tweets via MCAFEE's

verified Twitter account online (the "Official McAfee Twitter Account") recommending those altcoins for investment to members of the investing public in order to artificially inflate (or "pump" up) their market prices; and then sold (or "dumped") their investment positions in those altcoins into the short-term market interest stimulated by MCAFEE's deceptive tweets. Through this scalping scheme, MCAFEE and other McAfee Team members, including WATSON, collectively earned more than $2 million in illicit profits while the long-term value of the recommended altcoins purchased by investors declined substantially as of a year after the promotional tweets.

3. In the second scheme, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and other McAfee Team members, also used MCAFEE's Official McAfee Twitter Account to publicly tout fundraising events called "initial coin offerings" ("ICOs") in which startup businesses ("ICO issuers") issued and sold digital tokens qualifying as securities to the investing public, without disclosing and, in fact, concealing that the ICO issuers were compensating MCAFEE and his team for his promotional tweets with a substantial portion of the funds raised from ICO investors. As the United States Securities and Exchange Commission (the "SEC") had publicly warned, and as MCAFEE and WATSON well knew, the federal securities laws required them to disclose any compensation paid by ICO issuers for touting securities offerings styled as

2

ICOs. MCAFEE and other McAfee Team members, including WATSON, collectively earned more than $11 million in undisclosed compensation that they took steps to affirmatively hide from ICO investors.

## The Defendants

4.   JOHN DAVID MCAFEE, the defendant, is a 75 year-old citizen of the United States. MCAFEE founded and later sold the popular computer antivirus software company that bears his name. MCAFEE lived in Lexington, Tennessee during much of the scalping and ICO touting schemes, which took place from in or about December 2017 through in or about October 2018. In the years leading up to those schemes, MCAFEE attracted a substantial Twitter following to his Official McAfee Twitter Account. As a result, MCAFEE had attracted approximately 784,000 Twitter followers to his Official McAfee Twitter Account as of in or about February 2018, many of whom were cryptocurrency investors. Through public tweets, speeches at industry conferences and on YouTube, and his role as the CEO of a publicly traded cryptocurrency company, MCAFEE held himself out as an expert on cybersecurity and cryptocurrency.

5.   JIMMY GALE WATSON JR., the defendant, is a 40-year-old United States citizen. In or about November 2017, WATSON began working as a private security guard for JOHN DAVID MCAFEE, the defendant, and moved into MCAFEE's home in Tennessee. While WATSON was living and working with MCAFEE, MCAFEE promoted WATSON to the

3

role of "Executive Advisor" and later to CEO of the McAfee Team. In or about October 2018, WATSON left the McAfee Team.

### Cryptocurrency Technology and Regulation

6.    "Digital currency" or "cryptocurrency" is a digital representation of value that, like traditional coin and paper currency, functions as a medium of exchange — that is, it can be digitally traded or transferred, can be used for payment or investment purposes, and can be considered a valuable "digital asset." Unlike traditional "fiat" currency such as the United States dollar, digital currency is not issued by any government and does not have legal tender status in any particular country or for any government or other creditor. Instead, the exchange value of a particular digital currency generally is based on agreement or trust within its community of users. Examples of digital currencies, which come in the form of unique digital "tokens" or "coins," are "Bitcoin" ("BTC") and "Ether" ("ETH"), and, generally speaking, "altcoins," which typically refer to cryptocurrencies other than Bitcoin.

7.    Cryptocurrency tokens or coins are issued and distributed on a "blockchain." A blockchain is a digitalized, decentralized, and cryptographically-secured ledger that allows market participants to keep track of digital currency transactions without central recordkeeping. Blockchain records are published online and available to the public. Cryptocurrency can be

exchanged directly from person to person; through a digital asset or cryptocurrency exchange; or through other intermediaries.

8.    Certain uses and aspects of digital currencies qualify them as commodities under the Commodity Exchange Act of 1936 and regulations promulgated thereunder by the Commodity Futures Trading Commission (the "CFTC") prohibiting (among other things) fraud or manipulation in connection with any swap or contract of sale of any commodity in interstate commerce.    At all times relevant to this Indictment, several of the cryptocurrency altcoins that were scalped by JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, as part of the scalping scheme qualified as commodities under federal law and CFTC regulations.

9.    In certain circumstances, digital assets can also qualify as securities subject to the Securities Act of 1933 and Securities and Exchange Act of 1934 and regulations promulgated thereunder by the SEC, including, as relevant here, when unregistered securities styled as digital tokens are issued and sold to investors as part of an ICO. At all times relevant to this Indictment, at least one of the cryptocurrency altcoins that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, scalped as part of the scalping scheme qualified as a security under federal law and SEC regulations.  In addition, at all times relevant to this Indictment, the ICO tokens that were offered and sold to investors in the seven ICOs referred to below as "ICO-1"

5

through "ICO-7" qualified as securities under federal law and SEC regulations.

10. Like an initial public offering or "IPO," an initial coin offering or "ICO" is a mechanism by which a business can raise funds from members of the investing public to further goals of the business. In a traditional IPO, a business corporation typically issues, offers, and sells shares of stock in the corporation to investors in exchange for investment funds. In an ICO, in contrast, a business typically creates a unique series of digital coins or tokens and then issues, offers, and sells the ICO coins or tokens to potential investors in exchange for consideration, in order to raise money for the business through these investments. The consideration that the ICO issuer receives from investors often comes in the form of ETH and BTC, but can also be United States dollars or another fiat currency.

11. On or about July 25, 2017, the SEC publicly issued a report (the "ICO Report") cautioning that initial and other digital coin offerings can be, and often are, offerings that qualify as securities under the federal securities laws.

12. On or about November 1, 2017, the SEC announced a warning (the "ICO Touting Warning") that anyone who promotes a digital token or coin that qualifies as a security under the federal securities laws must disclose the nature, source, and amount of any compensation received in exchange for the promotion, and that

6

a failure to disclose this information is a violation of the anti-touting provisions of the federal securities laws and may also be a violation of certain other provisions of those laws. The ICO Touting Warning stated in pertinent part:

> Celebrities and others are using social media networks to encourage the public to purchase stocks and other investments. These endorsements may be unlawful if they do not disclose the nature, source, and amount of any compensation paid, directly or indirectly, by the company in exchange for the endorsement. . . .
>
> Celebrities and others have recently promoted investments in Initial Coin Offerings (ICOs). In the [ICO Report], the [SEC] warned that virtual tokens or coins sold in ICOs may be securities, and those who offer and sell securities in the United States must comply with the federal securities laws. Any celebrity or other individual who promotes a virtual token or coin that is a security must disclose the nature, scope, and amount of compensation received in exchange for the promotion. A failure to disclose this information is a violation of the anti-touting provisions of the federal securities laws. Persons making these endorsements may also be liable for potential violations of the anti-fraud provisions of the federal securities laws, for participating in an unregistered offer and sale of securities, and for acting as unregistered brokers. The SEC will continue to focus on these types of promotions to protect investors and to ensure compliance with the securities laws.

13. News of the ICO Touting Warning was disseminated via articles published online by a variety of news outlets including *The Wall Street Journal*, *The New York Times*, *Forbes*, *Fortune*, *Cointelegraph* and *Medium*.

## The Means and Methods of the Scalping Scheme

14. The scalping scheme generally consisted of the following. *First*, JOHN DAVID MCAFEE, the defendant, directed a McAfee Team member and co-conspirator not named herein ("McAfee Team Member-1") to buy large quantities of a particular altcoin that MCAFEE planned to publicly endorse and then sell. Although MCAFEE typically instructed McAfee Team Member-1 to purchase a given altcoin for MCAFEE's benefit, other McAfee Team members, including JIMMY GALE WATSON JR., the defendant, frequently also mirrored MCAFEE's altcoin trades for themselves. *Second*, after these purchases, MCAFEE published endorsement tweets via his Official McAfee Twitter Account recommending the altcoin in question to the investing public for investment without disclosing that he owned large quantities of the promoted altcoin, and even though he had given false assurances that he would disclose such information in various tweets and public statements during the scheme. *Third*, MCAFEE and other McAfee Team members, including WATSON, then sold their respective investment positions in that altcoin into the temporary but significant short-term price increase that MCAFEE's Twitter endorsements typically generated, often for significant profits. *Finally*, the long-term value of the altcoin typically declined significantly as of a year following the inflationary tweets.

15. The endorsement tweets published by JOHN DAVID MCAFEE,

the defendant, during the scalping scheme included false and misleading statements and omissions concealing that MCAFEE's true motive for recommending certain altcoins was to artificially inflate their short-term value for his own benefit and did not reflect an unbiased judgment that the altcoins represented promising investments.

16.    From in or about December 2017 through in or about January 2018, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and other McAfee Team members, collectively earned more than $2 million in profits by scalping at least twelve publicly traded altcoins.  From in or about December 2017 through in or about October 2018, MCAFEE and WATSON, and other McAfee Team members, engaged in various efforts to liquidate the digital asset proceeds of their scalping activities into United States currency.

## The Means and Methods of the ICO Touting Scheme

17.    During the period from at least on or about December 20, 2017 through on or about February 10, 2018, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and other McAfee Team members, conducted Twitter promotions of at least seven ICOs ("ICO-1" through "ICO-7," respectively) that qualified as securities offerings in exchange for more than $11 million in ETH and BTC (plus ICO tokens that were then worth millions of dollars) paid to the McAfee Team by the ICO issuers sponsoring those ICOs ("Issuer-1" through "Issuer-7," respectively).  In each instance, MCAFEE

9

and WATSON failed to disclose to ICO investors that the ICO Issuers were paying the McAfee Team a substantial portion of the funds raised from ICO investors for their touting efforts, despite knowing that they were required to disclose such compensation under federal securities laws. Furthermore, in several instances during this ICO touting scheme, MCAFEE and WATSON took active steps to conceal their secret compensation arrangements with ICO issuers from ICO investors, and MCAFEE made false and misleading statements and omissions to hide such deals from ICO investors.

18. From in or about December 2017 through in or about October 2018, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and other McAfee Team members, engaged in various efforts to liquidate the digital asset proceeds of their ICO touting activities into United States dollars.

## COUNT ONE
### (Commodities and Securities Fraud Conspiracy: Scalping)

The Grand Jury charges:

19. The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

20. From at least in or about December 2017, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown,

willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, commodities fraud, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), and Title 17, Code of Federal Regulations, Section 180.1(a), and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

21.  It was a part and an object of the conspiracy that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, would and did use and employ, and attempt to use and employ, in connection with a contract of sale of a commodity in interstate commerce, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 180.1, by: (a) using and employing, and attempting to use and employ, manipulative devices, schemes, and artifices to defraud; (b) making, and attempting to make, untrue and misleading statements of material facts and omitting to state material facts necessary in order to make the statements made not untrue or misleading; and (c) engaging, and attempting to engage in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, to wit, MCAFEE and WATSON agreed to participate in the scalping scheme described above in which they would and did buy publicly traded altcoins qualifying as commodities, used false

and misleading Twitter messages to recommend those altcoins for investment by members of the investing public without disclosing that they had taken investment positions in those altcoins with the intention of selling them in the short term, and then sold the altcoins into the short-term market interest stimulated by the deceptive recommendations.

22.   It was further a part and an object of the conspiracy that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, MCAFEE and WATSON agreed to participate in the scalping scheme described above in which they would and did

buy publicly traded altcoins qualifying as securities, used false and misleading Twitter messages to recommend those altcoins for investment by members of the investing public without disclosing that they had taken investment positions in those altcoins with the intention of selling them in the short term, and then sold the altcoins into the short-term market interest stimulated by the deceptive recommendations.

<u>Overt Acts</u>

23.   In furtherance of the conspiracy and to effect its illegal objects, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   During the period from in or about December 2017 through in or about January 2018, MCAFEE and WATSON scalped altcoins to investors at artificially inflated market prices, including to several investors who resided in the Southern District of New York.

b.   On or about January 11, 2018, McAfee Team Member-1 submitted an application online to open an account with a digital asset exchange located in the Southern District of New York (the "SDNY Exchange") so that McAfee Team Member-1 and MCAFEE could liquidate (among other things) digital asset proceeds of the scalping scheme.

13

c.    On or about January 14, 2018, McAfee Team Member-1 sent an email to the SDNY Exchange in which he identified himself as an "employee of John McAfee," and threatened to sue the SDNY Exchange for rejecting that application.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Wire Fraud Conspiracy: Scalping)

The Grand Jury further charges:

24.    The allegations contained in paragraphs 1 through 18 and 23 of this Indictment are repeated and realleged as if fully set forth herein.

25.    From at least in or about December 2017, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

26.    It was a part and an object of the conspiracy that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit

14

and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, MCAFEE and WATSON agreed to participate in the scalping scheme described above that would and did involve the use of interstate wire communications.

(Title 18, United States Code, Section 1349.)

## COUNT THREE
### (Wire Fraud: Scalping)

The Grand Jury further charges:

27.  The allegations contained in paragraphs 1 through 18 and 23 of this Indictment are repeated and realleged as if fully set forth herein.

28.  From at least in or about December 2017, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals,

15

pictures, and sounds for the purpose of executing such scheme and artifice, to wit, MCAFEE and WATSON participated in the scalping scheme described above and they used interstate wire communications in the course of doing so.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
### (Securities and Touting Fraud Conspiracy: Touting)

The Grand Jury further charges:

29. The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

30. From at least in or about December 2017, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, and touting fraud, in violation of Title 15, United States Code, Sections 77q(b) and 77x.

31. It was a part and an object of the conspiracy that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others

known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, MCAFEE and WATSON agreed to participate in the ICO touting scheme described above in which they would and did publish Twitter messages recommending certain ICOs qualifying as securities offerings to members of the investing public through false and misleading representations and omissions concealing that the ICO issuers were paying MCAFEE and WATSON a substantial portion of the funds raised from ICO investors to publish such ICO recommendations.

32.    It was further a part and an object of the conspiracy that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants,

and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instruments of transportation and communication in interstate commerce and of the mails, would and did publish, give publicity to, and circulate notices, circulars, advertisements, newspapers, articles, letters, investment services, and communications which, though not purporting to offer securities for sale, described such securities for consideration received and to be received from issuers, underwriters, and dealers, without fully disclosing the receipt, whether past and prospective, of such consideration and the amount thereof, in violation of Title 15, United States Code, Sections 77q(b) and 77x, to wit, MCAFEE and WATSON agreed to participate in the ICO touting scheme described above in which they would and did publish Twitter messages recommending certain ICOs qualifying as securities offerings to members of the investing public without disclosing the nature, source, and amount of compensation that they were being paid by the ICO issuers in exchange for publishing such ICO recommendations.

### Overt Acts

33.  In furtherance of the conspiracy and to effect its illegal objects, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

18

a.    During the period from on or about December 20, 2017 through on or about February 10, 2018, MCAFEE published Twitter messages recommending several ICOs without disclosing the compensation that the ICO issuers were paying him and other members of his team, including WATSON, for those ICO recommendations, and at least one investor who resided in the Southern District of New York purchased ICO tokens based on his review of MCAFEE's ICO recommendations on Twitter.

b.    On or about January 1, 2018, MCAFEE opened an account in his own name at a digital asset exchange in California (the "California Exchange") with assistance from WATSON and WATSON's then-wife.

c.    During the period from in or about January 2018 through in or about February 2018, MCAFEE and WATSON caused WATSON's then-wife to use MCAFEE's California Exchange account to liquidate (among other things) digital asset proceeds of the ICO touting scheme into millions of dollars in United States currency, and to wire transfer more than a million dollars in such liquidation proceeds to a bank account registered to MCAFEE in Tennessee via transactions that were routed through an intermediate bank in the Southern District of New York (the "SDNY Intermediate Bank").

d.    In or about April 2018, MCAFEE and WATSON caused WATSON's then-wife to submit an application online to open an

account at the SDNY Exchange so that MCAFEE and WATSON could liquidate (among other things) digital asset proceeds of the ICO touting scheme.

(Title 18, United States Code, Section 371.)

## COUNT FIVE
### (Wire Fraud Conspiracy: Touting)

The Grand Jury further charges:

34.    The allegations contained in paragraphs 1 through 18 and 33 of this Indictment are repeated and realleged as if fully set forth herein.

35.    From at least in or about December 2017, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

36.    It was a part and an object of the conspiracy that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television

20

communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, MCAFEE and WATSON agreed to participate in the ICO touting scheme described above, in which they would and did induce investors to buy digital tokens sold by ICO issuers based on their publication of fraudulent Twitter recommendations touting the issuers' ICOs through false and misleading representations and omissions concealing that the ICO issuers were paying MCAFEE and WATSON a substantial portion of the funds raised from ICO investors to publish such ICO recommendations, and would and did use interstate wire communications in the course of doing so.

(Title 18, United States Code, Section 1349.)

## COUNT SIX
### (Wire Fraud: Touting)

The Grand Jury further charges:

37. The allegations contained in paragraphs 1 through 18 and 33 of this Indictment are repeated and realleged as if fully set forth herein.

38. From at least in or about December 2017, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown,

21

willfully and knowingly, having devised and intending to devise a
scheme and artifice to defraud and for obtaining money and property
by means of false and fraudulent pretenses, representations, and
promises, and attempting to do so, did transmit and cause to be
transmitted by means of wire, radio, and television communication
in interstate and foreign commerce, writings, signs, signals,
pictures, and sounds for the purpose of executing such scheme and
artifice, to wit, MCAFEE and WATSON participated in the ICO touting
scheme described above and they used interstate wire
communications in the course of doing so.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT SEVEN
### (Money Laundering Conspiracy)

The Grand Jury further charges:

39.    The allegations contained in paragraphs 1 through 18 and
33 of this Indictment are repeated and realleged as if fully set
forth herein.

40.    From at least in or about December 2017, up to and
including at least in or about October 2018, in the Southern
District of New York and elsewhere, JOHN DAVID MCAFEE and JIMMY
GALE WATSON JR., the defendants, and others known and unknown,
willfully and knowingly, did combine, conspire, confederate, and
agree together and with each other to commit money laundering, in
violation of Title 18, United States Code, Section 1957(a).

22

41.    It was a part and an object of the conspiracy that JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, and others known and unknown, in the United States and in the special and maritime and territorial jurisdiction of the United States, willfully and knowingly would and did engage and attempt to engage in one and more monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the wire fraud offense charged in Count Six of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

42.    As a result of committing one or more of the offenses charged in Counts One through Six of this Indictment, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendants personally obtained.

43.    As a result of committing the offense charged in Count

23

Seven of this Indictment, JOHN DAVID MCAFEE and JIMMY GALE WATSON JR., the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in said offense or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense that the defendants personally obtained.

<u>Substitute Assets Provision</u>

44.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

FOREPERSON

AUDREY STRAUSS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOHN DAVID MCAFEE, and
JIMMY GALE WATSON JR.,

Defendants.

## SEALED INDICTMENT

21 Cr.

(18 U.S.C. §§ 371,
1343, 1349, 1956 and 2.)

AUDREY STRAUSS
United States Attorney.

A TRUE BILL

Foreperson.